No. 16,373.

E. J. SCARRY AND COMPANY *v.* PAPER PRODUCTS COMPANY.
(224 P. [2d] 940)

Decided October 30, 1950.   Rehearing denied December 4, 1950.

Mr. FOSTER CLINE, for plaintiff in error.

Mr. SAMUEL J. FRAZIN, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will hereinafter refer to the parties as they appeared in the trial court where plaintiff in error was defendant and defendant in error was plaintiff.

Plaintiff in its complaint alleged that defendant was indebted to it in the sum of $5435.00 for 650 cases of toilet tissue sold and delivered to defendant by plaintiff.

Defendant's answer contained the following: "Denies that the defendant owes the plaintiff $5,435.00 as alleged in said paragraph; and in this connection, the defendant admits there has been business connections concerning a car load of paper purchased by the defendant from the plaintiff, but in this connection alleges the grade and quality of said paper was not such as represented to the damage of the defendant. The defendant further alleges that it was understood and agreed between the plaintiff's representative who took the order from the defendant and the defendant company that said paper was to be shipped immediately and delivery was to be made in the very near future, but instead of delivery in the near future, delivery was delayed five or six weeks. That in the meanwhile the price of paper had decreased, and the defendant has been damaged because of said neglect of the plaintiff to a delivery of said paper forthwith as per agreement."

In its cross complaint defendant alleged that there was a delay in delivery of the carload of paper ordered by it from the plaintiff, causing the defendant loss of profit

by reason of the failure of plaintiff to deliver the said paper on or before April 25, 1948, as per agreement, whereas the said carload did not arrive in Denver and was not received by the defendant company until May 20, 1948; that the price of paper had depreciated and that by reason of the delay in delivery the defendant was unable to make any profit, with the exception of a small profit on approximately 200 cases, whereas the usual profit, and the reasonable profit defendant could have made if said delivery had been made as represented and ordered, would have been approximately $4.50 per case; that because of the delay in shipping, the plaintiff lost a profit of $4.50 per case on approximately 400 cases, or $1,800. Defendant further alleged that because of the drop in market value and the quality of the paper, it retained approximately 200 cases which it was unable to dispose of unless it was sold at a price of approximately one-half the cost thereof, or loss of 200 cases held by it of the value of $900, and it prays for judgment in the sum of $2,700. The allegations of the cross complaint were denied by plaintiff.

Trial was to a jury, and a verdict was returned for plaintiff in the sum of $4,560.00, upon which judgment was entered. Defendant seeks reversal by writ of error.

That portion of the evidence which is undisputed may be summarized as follows: On April 10, 1948, defendant placed a written order with plaintiff for "1 only carload Fillina Toilet Tissue (650 cases) $9.90 per case." In the space provided on the order blank following the printed statement "Requested Delivery Date," the word "Rush" was typed by the salesman of plaintiff. The order blank form used was the form of defendant purchaser. On the date of the order, toilet tissue was in short supply with consequent heavy demand. Plaintiff is a jobber in Boston, Massachusetts. It takes orders for carload lots of paper; sends the orders to paper mills which prepare and consign the carload lots as advised. On April 13, 1948, the paper mill selected by plaintiff

to fill defendant's order acknowledged receipt of said order. The bill of lading of the Lehigh Valley Railroad Company showed shipment of the carload of paper on April 29, 1948, from Ransom, Pennsylvania, consigned to the plaintiff in Denver. The shipment did not arrive in Denver until May 20, 1948.

Immediately following placing of the order, defendant put a salesman to work selling the ordered tissue, and, with defendant's authority the salesman promised delivery before April 30, 1948. Between April 10, 1948, and May 20, 1948, there was a "break" in the market and standard brands of tissue reappeared in plentiful supply with resultant sharp break in the price. When the paper arrived May 20th, defendant attempted to make delivery to customers whose orders had been taken previously. William D. Sullivan, the officer of defendant who signed the original order, testified in this connection, "We hired several trucks and tried to deliver it all as quickly as possible. Most of it came back to us the same day. We sent out 40 cases one morning. I think 31 came back in the afternoon." The paper could then be bought for "half the price." Sullivan also testified concerning the original order, that the salesman representing plaintiff, "brought out four or five different samples. He had them in rolls but there was no name on any of it. He showed me the various qualities. Well, some of them were just—I wouldn't pay anything for them. I picked up the best one I could find there. He said this was first comparable to Delsey. He said it is practically the same product. Naturally, I knew Delsey was the best product on the market, selling for 17 or 18¢ on the market at that time."

After the paper was delivered to defendant, certain telegrams and letters were exchanged between the parties. Under our view of this controversy these instruments are controlling, and we set them forth in full as follows:

On June 2, 1948, plaintiff wired defendant as follows:

"Would appreciate remittance $6435.00 due April 29. Thank you." On the same date defendant wired plaintiff the following answer: "Retel car not received until middle May will be paid on 15th." This was twelve days after the shipment was received, and unquestionably after defendant's customers had refused to accept delivery of previous orders.

On July 13, 1948, plaintiff wired defendant as follows: "Re: invoice April 29 $6,435.00 must have check immediately. Promised twice. Answer Western Union." The following day defendant answered this wire as follows: "Your check will be sent last of week when Sullivan returns."

On July 28, 1948, plaintiff wrote to defendant, stating in part: "Since shipping you a carload of paper about ninety days ago we have wired and called you long distance at considerable expense.

"We have had three or four definite promises of your full payment and finally when we spoke last week we were promised a substantial check on account at once. Up to the present writing we have not received anything. You no doubt know, being in business, that it is imperative for us to collect our money within a reasonable length of time. This transaction has gone beyond that stage." No answer to this letter is shown.

About August 20, 1948, the treasurer of plaintiff came to Denver and defendant paid $1,000.00 on the account. He testified: "Q. What arrangements did you make with Mr. Scarry, if any? A. A very definite one. Mr. Scarry gave me $1,000 on account and promised to pay the balance on or before the 10th of September. Q. At that time when you were in Denver and talked to Mr. Scarry, was there any other conversation regarding this, in any way, anything at all? A. Yes, there was some conversation about the paper. I said to him, 'Mr. Scarry, I would like to see what was delivered to you since we ourselves did not deliver it. There are many possibilities something might have gone amiss. I would like to examine it

for myself.' Whereupon, Mr. Scarry ordered one of his employes to bring a sample roll from stock and we examined it. Q. What did you find? A. To be exactly as what was sold. Q. As per the sample? A. As per the sample. * * * Q. Did Mr. Scarry say anything about the lateness in delivery? A. No, sir."

Thereafter, and on August 30, 1948, plaintiff wrote a letter to defendant, which contained the following: "I wish to take this opportunity to confirm our agreement whereby I have accepted a check of $1,000 on account of our invoice in the amount of $6,435.00, the balance to be paid to us on or before the 10th of September."

On September 13, 1948, plaintiff sent the following wire to defendant: "Re: Promised check 10th not received. Send at once." On the same day, defendant answered by letter as follows: "Re your telegram received this morning. We are waiting for disposition of the tissue we have on hand as discussed with Mr. Epstin. Please advise."

It is very significant that in the exchange of all these telegrams and letters, there is not to be found the least suggestion that defendant gave any notice to plaintiff of a failure to make delivery within a stipulated time, or that there was a breach of warranty concerning the quality of the merchandise.

There is no contention that defendant did not accept the merchandise within the meaning of the section of the Uniform Sales Act pertaining to that question (Session Laws 1941, page 842, chapter 228, section 48). Defendant attempts to justify his failure to pay the contract price by section 69 of the Uniform Sales Act which provides in part: "(1) Where there is a breach of warranty by the seller, the buyer may, at his election (a) Accept and keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price; (b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty."

The points specified as grounds for reversal are that: (1) The trial court erred in giving instruction No. 10, which placed a limitation of $2040.00 upon the possible damage of defendant to be allowed in diminution of the purchase price. (2) The trial court erred in refusing to give defendant's tendered instructions 1 and 2, which dealt generally with the measure of damages claimed by defendant as recoupment for his alleged loss resulting from late delivery, and for breach of warranty as to quality. (3) The trial court erred in refusing to permit defendant to reopen the case for additional testimony to explain in greater detail the amount claimed as loss. (4) The trial court erred in interrupting counsel for defendant while he was addressing the jury.

As we view this controversy, we can dispose of all of these specifications by a determination of the major question, namely, whether, under the admitted facts, defendant was entitled, as a matter of law, to any relief whatever against the plaintiff's claim for the full contract price.

■ The question presented for determination is: *Where a purchaser of goods accepts delivery, and, after full knowledge of the quality thereof, repeatedly makes written unqualified promises to pay the contract price, which promises continue over a period of ninety days, can such purchaser thereafter be heard to claim damage for late delivery, or for breach of warranty as to quality?*

The question is answered in the negative. We are fully satisfied that section 49 of the Uniform Sales Act (Session Laws 1941, chapter 228) is conclusive against defendant under the facts in this case. That section provides: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. *But, if, after the acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty*

*within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."* (Italics supplied.)

■ Under this statute defendant had the burden of proof of establishing the fact that notice of the broken promise or breach of warranty was given to plaintiff within a reasonable time after it knew, or should have known, that the performance of plaintiff was objectionable. Upon defendant's own evidence, this knowledge of the asserted defective performance was acquired by it immediately upon delivery and acceptance of the merchandise.

Even prior to the adoption of the Uniform Sales Act, when the majority rule did not require such notice as a condition precedent to the right to sue for damages for defective performance after the acceptance of goods by a purchaser, strong statements are found in the decided cases directing attention to the reasons for adopting the statutory provision requiring notice. In the early case of *Day v. Pool,* 52 N. Y. 416, we find the following: "Of course, there is danger of fraud and false claims, even where there is an express warranty, when notice is not early given of the defect. It leads the buyer into temptation. Hence, juries should listen to such claims (never presented when their falsity could have been ascertained) with great caution. The proof thereof should be more clear than if the buyer had acted with the frankness of an honest man, willing to allow his claims to be tested. This is so declared by courts, while the rule is maintained as to an express warranty as above stated."

In the case at bar there is no competent evidence tending to establish that the notice of defective performance which the statute requires was ever given to plaintiff by defendant. The correspondence between the parties indicates clearly that no such notice was within the contemplation of defendant, and that none, in fact, was given. The giving of notice was a condition precedent to defendant's right to recover for any claimed damage,

and it necessarily follows that it failed to prove a claim for diminution of the purchase price of the goods, or for damages of any kind.

The verdict of the jury, in effect, awarded the defendant a recoupment of $875.00. No cross error is assigned by plaintiff, and accordingly we do not disturb the judgment entered upon the verdict, since the party having cause to complain with regard thereto is content with the result obtained upon the trial.

The judgment is affirmed.